By the Coubt.—Sedg-wiok,
In this case the learned j udge directed a verdict for- plaintiff. It cannot be doubted that the testimony, given by the defendant himself, showed without dispute that the plaintiff was entitled to receive for his services, alleged in the complaint,'. $2,500, the amount ha claimed. The only question on the facts was whether plaintiff’s claim was a personal indebtedness of the defendant or whether it was a claim to a fund held by one Gilmore. If it were the former, there was the further question whether the complaint alleged it, as the cause of action.
The facts were as follows : the defendant had employed, in a form not necessary to describe, the plaintiff, to collect a claim against the United States, and agreed, in consideration of plaintiff’s services, to give *236 him “one-half of all sums which may be recovered for or paid to me, my representatives or assigns, on account of the claim referred to.” The plaintiff then employed certain attorneys in Washington to prosecute the claim before the court of claims. The prosecution was successful, and ended in a warrant being drawn in the treasury department for $10,000, to the order of the defendant. The warrant could not be obtained without special authority from defendant, and for this purpose-the defendant, with the knowledge, and consent of the plaintiff, gave a firm, a member of which was one of the attorneys employed by plaintiff, a power of attorney to receive and indorse the warrant and to-receive its amount. It would appear at this point, that tíre plaintiff, having agreed that his attorneys, should equally share with him his one half of the recovery, there was an agreement made in reference to-the distribution of the proceeds of the warrant. The-defendant testifies : “ Dickinson authorized me to give Gfilmore a power of attorney, on condition that I would sign an agreement to give said Dickinson $2,500. The power and the agreement were executed; Gfilmore went to the treasury department and came back with the money; I received as per agreement $5,000, $2,500-was for Dickinson and $2,500 for Gfilmore.” On this statement it is clear to me that the plaintiff’s right to payment had become perfect and that the defendant received the money, when Gfilmore, his personal representative, collected the warrant, and that it was a personal obligation by the defendant to pay the plaintiff. His legal relation to Gfilmore was such that he had the power and was bound to see that Gfilmore paid to the plaintiff, or to demand the money from Gfilmore and pay it himself. Of course it is perceived that the facts suggest that one way of discharging the personal obligation would be to make a competent agreement that such obligation should be discharged by a transfer *237 to the plaintiff of his right to the fund in the hands of ■Gilmore, to the extent of $2,500. Such a discharge would be in the nature of an accord and satisfaction. But the facts do not show such an accord.
. The first agreement and the second agreement were that the defendant would pay and would give. It may . be true that their agreement was such, that the plaintiff, if he chose and was able, had the right to require that the amount due to him should be reserved out of the recovery, before payment to the defendant, but bis right was not gone if he allowed the defendant to receive the recovery. He could then assert the personal obligation to pay. If the facts showed such an accord and satisfaction, or, as the defendant’s counsel claimed, a payment actually by Gilmore to plaintiff, it was an affirmative defense, which must be pleaded to avail. The answer was, however, a general denial.
It stands in this way, then, that there was an agreement that the defendant should pay to plaintiff one-half of any recovery by defendant, and. the defendant did recover and receive$10,000. The defendant, before the receipt by him of this amount, by his attorney, Gilmore, recognized and acted upon a subordinate agreement that the plaintiff had made with the attorneys employed by him, and consented that they should be paid out of the amount to be collected by Gilmore, $2,50.0, and promised to give the plaintiff out of the same proceeds $2,500. This promise he has failed to keep, and there is no proof that the plaintiff ever agreed to look to Gilmore for the $2,500. The same state of facts shows that the first promise to pay one-half of the proceeds has been broken.
As to whether this cause of action was stated by the complaint, there would have been no doubt if the plaintiff had contented himself with pleading the first agreement, and not obscuring the matter with a further indefinite set of, allegations that, fortunately for him, *238 did not set up a defense for the defendant, but was calculated to suggest that the first contract had been merged in a subsequent agreement. On the whole, the matters subsequently stated as to the manner in which Gilmore disposed of the money received upon the warrant should be rejected as surplusage.
The views above expressed cover the ground to • which the exceptions in the case extend, and there is no necessity of detailing those exceptions.
The judgment should be affirmed, with costs.
Curtis, Ch. J., and Freedman, J., concurred.